M61PLEVP

1 UNITED STATES DISTRICT COURT
 SOUTHERN DISTRICT OF NEW YORK
2 ------------------------------x

3 UNITED STATES OF AMERICA,

4     v.        20 CR 0681 (JPC)-1
               Plea
5 MARIANNA LEVIN,

6      Defendant.

7 ------------------------------x

8            New York, N.Y.
            June 1, 2022
9            2:02 p.m.

10

11 Before:

12       HON. JOHN P. CRONAN,

13           District Judge

14        APPEARANCES

15

16 DAMIAN WILLIAMS,
   United States Attorney for the
   Southern District of New York
17 BY:  NICHOLAS WILLIAM CHIUCHIOLO
   Assistant United States Attorney
18

19 KAPLAN, HECKER & FINK, LLP
   Attorneys for Defendant
 BY:  JENNA MINICUCCI DABBS
20   MOLLY WEBSTER

21

22 ALSO PRESENT:  Special Agent Michael Coughlin, FBI

23

24

25

M61PLEVP

1                    (In open court)

2                    (Case called)

3                    MR. CHIUCHIOLO:  Good afternoon, your Honor.  Nicholas

4    Chiuchiolo on behalf of the government.  I'm joined by Special

5    Agent Michael Coughlin with the FBI.

6                    THE COURT:  Good afternoon, Mr. Chiuchiolo and Special

7    Agent Coughlin.

8                    MS. DABBS:  Good afternoon, your Honor.  Jenna Dabbs

9    from Kaplan, Hecker and Fink for Marianna Levin who is seated

10   beside me, and I'm joined at counsel table, as well, by my

11   colleague Molly Webster.

12                   THE COURT:  Good afternoon, Ms. Dabbs, Ms. Webster and

13   Ms. Levin.

14                   And I'll begin by just noting, and people should do

15   whatever they're comfortable with, but under our current

16   protocols, if all the attorneys speaking, or Ms. Levin as well,

17   they can take off their masks if they wish to, but no one is

18   required to.

19                   So Ms. Dabbs, we understand we're here because your

20   client, Ms. Levin, wishes to plead to Count Three of the

21   superseding indictment pursuant to a plea agreement.

22                   MS. DABBS:  That is correct, your Honor.

23                   THE COURT:  Great.  And, Ms. Levin, is that right, do

24   you wish to plead guilty to Count Three today?

25                   THE DEFENDANT:  That's correct.

M61PLEVP

1          THE COURT:  Is that a yes?

2          THE DEFENDANT:  Yes, it's correct.

3          THE COURT:  So, Ms. Levin, I'm going to now ask you

4    some questions so I can ensure that you wish to plead guilty

5    because you are guilty and not for some other reason.  And the

6    purpose of these questions, also, is to make sure you

7    understand what rights you will be giving up by pleading

8    guilty.

9          If you don't understand any of my questions, or if you

10   want to consult with your attorneys at any time for any reason,

11   just let me know.  I'll arrange for you and your attorneys to

12   have as much time as you like to discuss, and probably anything

13   you need to, so please don't hesitate to do that because it's

14   very important that you understand each question I ask you

15   before you answer.  You do you understand that?

16         THE DEFENDANT:  Thank you, yes.

17         THE COURT:  And the first thing, Ms. Levin, I'm going

18   to ask you to stand, and I'll ask Ms. Henrich to administer the

19   oath, please.

20         (Defendant sworn)

21         Thank you.

22         Ms. Levin, you're now under oath, which means that if

23   you answer any of my questions falsely, you may be prosecuted

24   for the separate crime of perjury, and any false answers that

25   you give under oath may be used against you in such a

M61PLEVP

| | |
|---|---|
| 1 | prosecution.  Do you understand that? |
| 2 | THE DEFENDANT:  Yes, I understand. |
| 3 | THE COURT:  And I'm first going to ask you some? |
| 4 | A.  Questions about yourself.  First of all, what is your full |
| 5 | name? |
| 6 | THE DEFENDANT:  Marianna Levin. |
| 7 | THE COURT:  How old are you, Ms. Levin? |
| 8 | THE DEFENDANT:  49. |
| 9 | THE COURT:  How far did you go in school? |
| 10 | THE DEFENDANT:  I got Master's degree at Michigan |
| 11 | University for nursing. |
| 12 | THE COURT:  And when, I'm sorry? |
| 13 | THE DEFENDANT:  When?  It was, I believe —— I don't |
| 14 | remember for sure.  It's probably 2022 —— or 2002, sorry. |
| 15 | THE COURT:  So you said you received your Master's |
| 16 | degree in nursing from? |
| 17 | THE DEFENDANT:  Michigan University. |
| 18 | THE COURT:  Michigan University.  And tell me a bit |
| 19 | about your employment experience.  What have you done for a |
| 20 | living? |
| 21 | THE DEFENDANT:  I am a nurse, and I was doing the |
| 22 | nursing for my agency, and after I got my agency, my own |
| 23 | agency. |
| 24 | THE COURT:  And you said you had your own agency; is |
| 25 | that right? |

M61PLEVP

1          THE DEFENDANT:  Yes, home care agency, yes.

2          THE COURT:  And what type of agency was that?

3          THE DEFENDANT:  Home care agency.

4          THE COURT:  Okay.  Have you ever been treated or

5    hospitalized for any sort of mental illness?

6          THE DEFENDANT:  No.

7          THE COURT:  No.  Are you currently now, or have you

8    recently been, under the care of any doctor or psychiatrist?

9          THE DEFENDANT:  My internal doctor, yes.

10         THE COURT:  Are you taking any medication that your

11   internal doctor has prescribed?

12         THE DEFENDANT:  Yes, I am.

13         THE COURT:  And what type of medication?

14         THE DEFENDANT:  It's for diabetes, Metformin; for

15   blood pressure, metoprolol, and for the heart.

16         THE COURT:  Can you spell that?

17         THE DEFENDANT:  M-e-t-o-p-r-o-l-o-l.  Also, I'm taking

18   for the stomach, it's Nexium, and medication, sometimes I take

19   Tylenol because I have back pain, and also, I take valerian

20   root for the anxiety and lorazepam for anxiety.

21         THE COURT:  Over the past two days, Ms. Levin, have

22   you taken any of those medications?

23         THE DEFENDANT:  For the diabetes, for the blood

24   pressure and for the stomach, yes, and also valerian root I

25   took today also.

M61PLEVP

1              THE COURT:  And I apologize, what did you take today?

2              THE DEFENDANT:  Valerian root.

3              THE COURT:  Do any of these medications effect your

4    ability to think clearly?

5              THE DEFENDANT:  No.

6              THE COURT:  Are you able to follow today's proceeding?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Are you feeling well physically today?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Does your mind feel clear?

11             THE DEFENDANT:  Yes.

12             THE COURT:  And do you understand what is happening

13   today?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Ms. Dabbs, I assume you've discussed this

16   matter with your client?

17             MS. DABBS:  Yes, your Honor.

18             THE COURT:  Do you think she is capable of

19   understanding the nature of today's proceedings?

20             MS. DABBS:  I do.

21             THE COURT:  And do you think she understands the

22   rights she would be waiving if she pleads guilty?

23             MS. DABBS:  I do.

24             THE COURT:  Does either counsel have any doubt as to

25   Ms. Levin's competence to plead guilty at this time?

M61PLEVP

1          MR. CHIUCHIOLO:  No, your Honor.

2          MS. DABBS:  No, your Honor.

3          THE COURT:  On the basis of Ms. Levin's answers to my

4   questions, my observations of her demeanor here in court, and

5   the representations of counsel here in court, I find that she

6   is competent to enter an informed plea of guilty at this time.

7          So, Ms. Levin, as I mentioned earlier, I'm now going

8   to explain certain constitutional rights that you have.  These

9   are the rights that you would be giving up if you enter a

10  guilty plea; so it's important that you know and understand

11  what those rights are.

12         Again, like I said before, please listen carefully to

13  me, and if you don't understand anything that I describe to

14  you, please stop me and either I or Ms. Dabbs or Ms. Webster

15  will explain the matter more fully for you.  Do you understand

16  that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Now, Ms. Levin, under the Constitution and

19  the laws of the United States, you have a right to plead not

20  guilty to the charges in the superseding indictment.  Do you

21  understand that?

22         THE DEFENDANT:  I understand.

23         THE COURT:  If you did plead not guilty, you would be

24  entitled to a speedy and public trial by a jury on the charges

25  in the superseding indictment.  Do you understand that?

M61PLEVP

1          THE DEFENDANT:  I understand.

2          THE COURT:  At trial, you would be presumed to be

3    innocent, and the government would be required to prove your

4    guilt by competent evidence beyond a reasonable doubt before

5    you could be found guilty.  Do you understand that?

6          THE DEFENDANT:  I understand.

7          THE COURT:  At the trial, and at every stage of your

8    case, you would be entitled to be represented by an attorney.

9    And if you could not afford an attorney, one would be appointed

10   at public expense, meaning free of charge, to represent you.

11   Do you understand that?

12         THE DEFENDANT:  I understand.

13         THE COURT:  Now, during the trial, the witnesses for

14   the government would have to come to court and testify in your

15   presence.  Your lawyers could cross-examine the witnesses for

16   the government.  They could object to evidence offered by the

17   government, and they could offer evidence on your own behalf if

18   you so desired.  And you would have the right to have subpoenas

19   issued or other process used to compel witnesses to testify in

20   your defense.  Do you understand that?

21         THE DEFENDANT:  I understand.

22         THE COURT:  At trial, although you would have the

23   right to testify, if you chose to do so, you would also have

24   the right not to testify.  And if you decided not to testify,

25   no one, including the jury, could draw any inference or

M61PLEVP

1    suggestion of guilt from the fact that you did not testify.  Do

2    you understand that?

3              THE DEFENDANT:  I understand.

4              THE COURT:  Have you had a full opportunity to discuss

5    with your lawyers whether there is a basis to seek suppression

6    of some or all of the evidence against you on the grounds that

7    your constitutional rights were violated?

8              THE DEFENDANT:  Yes.

9              THE COURT:  And do you understand that by pleading

10   guilty, you are giving up your right to seek suppression of any

11   evidence against you?

12             THE DEFENDANT:  I understand.

13             THE COURT:  If you were convicted at a trial, you

14   would have a right to appeal the verdict.  Do you understand

15   that?

16             THE DEFENDANT:  I understand.

17             THE COURT:  And even now, Ms. Levin, as you are

18   entering this plea, you have a right to change your mind, and

19   you have the right to plead not guilty and go to trial on the

20   charges contained in the superseding indictment.  Do you

21   understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Is that yes?

24             THE DEFENDANT:  Yes, I understand.

25             THE COURT:  If you plead guilty, and I accept your

M61PLEVP

1    plea, you will give up your right to a trial and the other

2    rights that I have just discussed, other than the right to a

3    lawyer, which you will have regardless of whether or not you

4    plead guilty.

5            But there will be no trial, and I will enter a

6    judgment of guilty, and I, at a later date, will sentence you

7    on the basis of your plea, after I've considered a presentence

8    investigation report and whatever submissions I get from your

9    lawyer and the government.

10           There will be no appeal with respect to whether the

11   government could use the evidence it has against you, or with

12   respect to whether you did or did not commit this crime.  Do

13   you understand that?

14           THE DEFENDANT:  I understand.

15           THE COURT:  And if you plead guilty, you'll also have

16   to give up your right not to incriminate yourself because I

17   will soon ask you questions about what you did in order to

18   satisfy myself that you are guilty, and that means you will

19   have to admit and acknowledge your guilt.  Do you understand

20   that?

21           THE DEFENDANT:  I understand.

22           THE COURT:  Do you understand all of the rights I just

23   explained to you?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Do you have any questions for me about any

M61PLEVP

1    of them?

2            THE DEFENDANT:  No.

3            THE COURT:  And are you willing to give up your right

4    to a trial and the other rights I just discussed with you?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Now, Ms. Levin, I've received from the

7    parties a signed plea agreement dated May 18th, 2022, which I

8    will mark as Court Exhibit 1.  I'm holding it up now.  Did you

9    sign this plea agreement?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Did you read the plea agreement before you

12   signed it?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Yes?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Did you also discuss it with your lawyers

17   before you signed it?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And, Ms. Dabbs, did you discuss the plea

20   agreement with Ms. Levin?

21           MS. DABBS:  Yes, your Honor.

22           THE COURT:  Ms. Levin, did you fully understand the

23   plea agreement --

24           THE DEFENDANT:  Yes.

25           THE COURT:  -- before you signed it?

M61PLEVP

1        THE DEFENDANT:  Yes.

2        THE COURT:  Now, under the plea agreement, you'll be

3   pleading guilty to Count Three of the superseding indictment,

4   which charges wire fraud, in violation of Title 18, United

5   States Code, Section 1343 and 2; do you understand that?

6        THE DEFENDANT:  Yes, I understand.

7        THE COURT:  Mr. Chiuchiolo, would you please state the

8   elements of the offense?

9        MR. CHIUCHIOLO:  Yes, your Honor.  The crime of wire

10  fraud has three elements:  first, the defendant devised a

11  scheme to defraud or to obtain money or property by materially

12  false or fraudulent pretenses, representations or promises, or

13  willfully participated in such a scheme with knowledge of its

14  fraudulent nature; second, the defendant acted with the intent

15  to defraud; and third, that in advancing, furthering or

16  carrying out the scheme, the defendant transmitted or caused to

17  be transmitted, any writing, signal or sound by means of a

18  wire, radio or television communication in interstate commerce.

19        In addition, the government would be required to prove

20  venue by a preponderance of the evidence.

21        THE COURT:  Thank you.

22        Ms. Levin, do you understand that if you were to go to

23  trial, the government would have to prove all of those elements

24  beyond a reasonable doubt, aside from the last part, venue,

25  which it would have to prove by a lower standard that's called

M61PLEVP

1    a preponderance of the evidence?

2              THE DEFENDANT:  I understand.

3              THE COURT:  Now, I'm going to tell you about the

4    maximum possible penalties for this crime.  The maximum means

5    just that, it means the most that could be possibly imposed.

6    It doesn't mean that that is what you will necessarily receive,

7    but it is important for you to understand that by pleading

8    guilty, you are exposing yourself to the possibility of

9    receiving any combination of punishments up to the maximum that

10   I'm about to describe.  Do you understand that?

11             THE DEFENDANT:  I understand.

12             THE COURT:  First, I'm going to tell you about the

13   maximum possible restrictions on your liberty.  The maximum

14   term of imprisonment for the crime charged in Count Three of

15   the superseding indictment is 20 years' imprisonment.

16             Your term of imprisonment may be followed by a term of

17   supervised release.  Supervised release means that you would be

18   subject to supervision by the probation department.  There

19   would be rules of supervised release that you'll have to

20   follow, and if you violate those rules, you can be returned to

21   prison without a jury trial to serve additional time, with no

22   credit for any time you have served in prison as a result of

23   your sentence, and no credit for any time spent on post-release

24   supervision.  Count Three carries a maximum term of supervised

25   release of 20 -- I'm sorry, of three years.  Do you understand

M61PLEVP

1    that?

2              THE DEFENDANT:  I understand.

3              THE COURT:  And you should also understand that there

4    is no parole in the federal system, and that if you are

5    sentenced to prison, you will not be released early on parole.

6    There is a limited opportunity to earn credit for good

7    behavior, but you will have to serve at least 85 percent of the

8    time you are sentenced to.  Do you understand that?

9              THE DEFENDANT:  I understand.

10             THE COURT:  Now, in addition to these restrictions on

11   your liberty, the maximum possible punishment also includes

12   certain financial penalties.  The maximum allowable fine for

13   Count Three is the greatest of $250,000, or twice the gross

14   pecuniary gain derived from the offense, or twice the gross

15   pecuniary loss to persons other than yourself, and so it's the

16   greatest of any of those.  Do you understand that?

17             THE DEFENDANT:  I understand.

18             THE COURT:  In addition, I can order restitution to

19   any person or entity that was injured as a result of your

20   criminal conduct, and under the plea agreement, you are

21   agreeing to make restitution in an amount that I will determine

22   in accordance with Title 18, United States Code, Section 3663,

23   3663(a) and 3664, and that amount will need to be paid in

24   accordance with the plan that I establish.  Do you understand

25   that?

M61PLEVP

1          THE DEFENDANT:  I understand.

2          THE COURT:  And I also can order you to forfeit all

3    property derived from the offense or used to facilitate the

4    offense, and pursuant to your plea agreement, you are admitting

5    the forfeiture allegation with respect to Count Three in the

6    superseding indictment, and you are agreeing to forfeit to the

7    United States, pursuant to Title 18, United States Code,

8    Section 981(a)(1)(C) and 28, U.S. Code, Section 2461(c), a sum

9    of money in U.S. currency of at least $1,496,000, which

10   represents proceeds traceable to the commission of the offense.

11   Do you understand that?

12         THE DEFENDANT:  I understand.

13         THE COURT:  And do you understand that any forfeiture

14   of your assets will not be treated in satisfaction of any fine,

15   restitution, cost of imprisonment, or any other penalty I may

16   impose on you in addition to forfeiture?  Do you understand

17   that?

18         THE DEFENDANT:  I understand.

19         THE COURT:  And lastly, I must order a special

20   assessment, a mandatory special assessment of $100; do you

21   understand?

22         THE DEFENDANT:  I understand.

23         THE COURT:  And, Mr. Chiuchiolo, did I state those

24   maximum penalties accurately?

25         MR. CHIUCHIOLO:  Yes, your Honor.

M61PLEVP

1          THE COURT:  Ms. Levin, do you have any questions about

2     those maximum penalties?

3          THE DEFENDANT:  No.

4          THE COURT:  Ms. Levin, are you a U.S. citizen?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And the reason I ask is this.  If you were

7     not a U.S. citizen, as a result of your guilty plea, there may

8     be adverse effects on your immigration status, which may be

9     more detention, following imprisonment, followed by removal or

10    deportation from the United States.  Do you understand that?

11         THE DEFENDANT:  I understand that.

12         THE COURT:  Do you understand that as a result of your

13    guilty plea, you may lose certain valuable civil rights, to the

14    extent you have them or you could obtain them now, such as the

15    right to vote, the right to sit on a jury, and the right to

16    possess any kind of firearm?

17         THE DEFENDANT:  I understand.

18         THE COURT:  Are you currently serving any other

19    sentence, state or federal, or being prosecuted any state or

20    Federal Court for any other crimes?

21         THE DEFENDANT:  No.

22         THE COURT:  Now, Ms. Levin, do you understand that if

23    your lawyers or anyone else attempted to predict what your

24    sentence will be, their prediction could be wrong?

25         THE DEFENDANT:  Yes, sir.

M61PLEVP

1          THE COURT:  Do you understand?

2          THE DEFENDANT:  Yes, I understand.

3          THE COURT:  And, Ms. Levin, I'll explain why that is

4    the case.  No one, not your lawyers, not the lawyers for the

5    government, no one can give you any assurance of what your

6    sentence will be.  That is because I am going to decide your

7    sentence, and I'm not going to do that today.  I'm going to

8    wait until I receive a presentence report from the probation

9    department.

10          I'm going to do my own calculation of the applicable

11   range under the U.S. sentencing guidelines.  I'm going to

12   consider that range and any departures from it, and I'm going

13   to determine what a reasonable sentence for you is based on the

14   many factors contained in the statute found at Title 18, U.S.

15   Code, Section 3553(a).  Do you understand that?

16          THE DEFENDANT:  I understand.

17          THE COURT:  And have you discussed that with your

18   attorneys?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And do you also understand that even if

21   your sentence ends up being different from what your lawyers or

22   anyone else has told you it might be, and even if it is

23   different from what you expect or hope it to be, you will still

24   be bound by your guilty plea, and you will not be able to

25   withdraw your guilty plea?

M61PLEVP

1          THE DEFENDANT:  I understand.

2          THE COURT:  You understand you said?

3          THE DEFENDANT:  I understand.

4          THE COURT:  Let me go back to the plea agreement

5    briefly.  Ms. Levin, in your plea agreement there's a

6    discussion of how the sentencing guidelines would apply in your

7    case, and it says here that you agree the applicable guidelines

8    offense level for the crime you're pleading to, the offense

9    level is 29; do you understand that?

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  And that offense level starts with a base

12   offense level of 7, pursuant to section 2B1.1 (a)(1); a

13   22-level increase because the intended loss amount was more

14   than $25 million or less than $65 million pursuant to section

15   2B1.1(b)(1)(L); a three-level increase because you were a

16   manager or supervisor of the criminal 3B1.1(b); and then a

17   three a three-level reduction because you're accepting

18   responsibility for your crimes pursuant to section 3E1.1.  Do

19   you understand that?

20          THE DEFENDANT:  I understand.

21          THE COURT:  And the plea agreement states that you

22   have no prior criminal history and, therefore, you're in

23   category I.  Do you understand that?

24          THE DEFENDANT:  Yes, I understand.

25          THE COURT:  And do you understand, Ms. Levin, that

M61PLEVP

1    with an offense level of 29 and a criminal history category of

2    I, you have stipulated to a sentencing guidelines range of 87

3    to 108 months' imprisonment and a fine range of $30,000 to

4    $300,000?  Do you understand that?

5            THE DEFENDANT:  I understand.

6            THE COURT:  Now, Ms. Levin, this plea agreement and

7    the agreement as to the applicable guidelines range is binding

8    on you and it is binding on the government.  It is not binding

9    on me.  As the judge in this case, as I mentioned earlier, I

10   have my own obligation to determine the correct guidelines

11   range and what the appropriate sentence should be in your case.

12           I'm not saying that I will come up with a guidelines

13   calculation that is any different from the one in the plea

14   agreement, but if I do, I will not let you withdraw your guilty

15   plea even if the range I determine is higher than the one you

16   agree with with the government.  Do you understand that?

17           THE DEFENDANT:  I understand.

18           THE COURT:  In addition, Ms. Levin, if I agree with

19   the guidelines range in your plea agreement, that range is not

20   mandatory.  It's only advisory.  I may sentence you to less

21   than 87 months or I may sentence you to more than 108 months.

22   I will arrive at that sentence only after I've considered the

23   presentence report I mentioned, I review any submission from

24   your lawyers and the government, and evaluate the relevant

25   factors I must consider in the statute I mentioned earlier,

M61PLEVP

 1   section 3553(a).  Do you understand that?

 2              THE DEFENDANT:  I understand.

 3              THE COURT:  Now, in this plea agreement you have

 4   waived your right to appeal or otherwise challenge any sentence

 5   that entails a term of imprisonment that is 108 months or less,

 6   and that includes bringing a collateral challenge, including a

 7   habeas petition to challenge your sentence.

 8              So in other words, Ms. Levin, if I sentence you to 108

 9   months in prison or anything less than 108 months in prison,

10   you would have no right to appeal or otherwise try to challenge

11   your sentence.  Do you understand that?

12              THE DEFENDANT:  I understand.

13              THE COURT:  And as part of your plea agreement, you

14   also have agreed not to appeal any term of supervised release

15   that is less than or equal to the statutory maximum term of

16   supervised release, which as I mentioned is three years.  Do

17   you understand that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Yes?

20              THE DEFENDANT:  Yes, I do.

21              THE COURT:  And you also have agreed not to appeal or

22   challenge any fine that is less than or equal to $300,000.  Do

23   you understand that?

24              THE DEFENDANT:  Yes, I understand.

25              THE COURT:  And do you understand that you have agreed

M61PLEVP

1    not to appeal or challenge any forfeiture or restitution amount

2    that is less than $65 million?  Do you understand that?

3              THE DEFENDANT:  I understand.

4              THE COURT:  You also agree not to appeal or challenge

5    any special assessment that is equal to or less than $100; do

6    you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And have you discussed all of these issues

9    with your attorney?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Does this written plea agreement

12   constitute your complete and total understanding of your

13   agreement with the government?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Has anything been left out of this plea

16   agreement?

17             THE DEFENDANT:  No.

18             THE COURT:  Other than what is written in the

19   agreement, has anyone made any promise or offered you any

20   inducement to plead guilty or to sign the agreement?

21             THE DEFENDANT:  No.

22             THE COURT:  Has anyone threatened you or forced you to

23   plead guilty or to sign the plea agreement?

24             THE DEFENDANT:  No.

25             THE COURT:  Has anyone made a promise to you as to

M61PLEVP

1    what your sentence will be?

2              THE DEFENDANT:  No.

3              THE COURT:  Ms. Levin, I'm going to ask you to tell me

4    in your own words what you did that makes you believe you are

5    guilty of the charge in Count Three of the superseding

6    indictment.  I'm going to ask you to move the mic up as close

7    to your face as you can and speak slowly so I'm able to hear

8    everything.

9              MS. DABBS:  And, your Honor, perhaps I could just flag

10   in advance, because I know it would make Ms. Levin more

11   comfortable, that she is reading from a statement that we've

12   worked together to prepare.  And I'm sure she will do her best

13   to speak up and slowly, and we've given a copy of it to the

14   court reporter as well, in case that's helpful.

15             THE COURT:  And, Ms. Levin, the statement that you're

16   going to read, is that statement accurate?

17             THE DEFENDANT:  Mmm, hmm.

18             THE COURT:  I'm sorry, is that a yes?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And does that statement reflect your own

21   description of what you did?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Okay.  So you may proceed whenever you're

24   ready.

25             THE DEFENDANT:  Between 2016 and 2020, in Brooklyn, I

M61PLEVP

1    owned and operated Life Quality Home Care, an agency that

2    provided home health aide to patients that qualify for at-home

3    care.  Between 2015 and 2020, I also acted as a manager at

4    Always Home Care, which is also a home health aide agency.

5             During that time, I learned that, in certain cases,

6    home health aides and patients at Life Quality and Always Home

7    Care agreed to submit Medicaid claims for services that were

8    not provided.  In these so-called "no show cases," the aides

9    split the Medicaid payments with their patients instead of

10   providing the services for which they submitted claims.

11            I knew that it was wrong and unlawful to receive

12   government funds in those circumstances, and I'm very sorry for

13   my actions.

14            THE COURT:  Thank you, Ms. Levin.  Let me just ask a

15   couple of follow-up questions to make sure I heard everything.

16   Where were the home care agencies located?

17            THE DEFENDANT:  It's in Brooklyn, both those agencies

18   in Brooklyn.

19            THE COURT:  And did your agency ever do any work in

20   Manhattan or The Bronx?

21            THE DEFENDANT:  Yes, we served all five boroughs.

22            THE COURT:  And in terms of any clients for which

23   Medicare was billed for services not rendered, were any of

24   those clients in Manhattan?

25            THE DEFENDANT:  I'm not sure.

M61PLEVP

1          THE COURT:  Do you know if any of the clients were in

2     The Bronx for which services were billed to Medicare but not

3     rendered?

4          THE DEFENDANT:  I'm not sure, but most of the clients

5     was to the Medicaid, not to the Medicare.

6          THE COURT:  I apologize.  Let me re-ask that.  Were

7     there any clients of yours located in Manhattan for whom

8     services you billed Medicaid but services were not actually

9     rendered?

10          THE DEFENDANT:  I'm not sure.

11          THE COURT:  Mr. Chiuchiolo, are there any questions --

12          MR. CHIUCHIOLO:  Your Honor, the government can

13     provide a proffer as to venue.  If this matter were to proceed

14     to trial, the government would establish that, as a result of

15     the scheme, Medicaid reimbursements and claims processing

16     information associated with the scheme, including fictitious or

17     fraudulent claims, were wired interstate to managed long-term

18     care providers located in the Southern District of New York,

19     including The Bronx.

20          THE COURT:  And, Ms. Dabbs, does the defendant contest

21     whether there's venue for Count Three?

22          MS. DABBS:  No, your Honor, she does not.

23          THE COURT:  And, Ms. Levin, is that right?  Do you

24     agree that there is venue in this judicial district for the

25     criminal conduct that you just described?

M61PLEVP

1          THE DEFENDANT:  Yes, yes.

2          THE COURT:  And I believe you mentioned this earlier,

3    but I may have missed it.  When your agencies submitted

4    requests for reimbursement that were fraudulent, how were those

5    requests submitted?

6          MS. DABBS:  Just a moment while I consult with my

7    client?

8          THE COURT:  Sure.

9          (Defendant conferring with her attorney)

10          THE DEFENDANT:  We submitted the claims during --

11    through the e-mail, but it's not distinguished between no show

12    or like that cases.  There's no way to know; so that was

13    submitted through the e-mail.

14          THE COURT:  So is it correct that you would submit

15    fraudulent claims for reimbursement by e-mail to Medicaid?

16          THE DEFENDANT:  Yes.  We submit through the long

17    term -- we submit through the long term.  We submit to them the

18    claims and they submit to the Medicaid.

19          THE COURT:  Mr. Chiuchiolo, any further questions of

20    the defendant that you want me to ask?

21          MR. CHIUCHIOLO:  One moment, your Honor.

22          (Pause)

23          MS. DABBS:  Your Honor, Mr. Chiuchiolo has just

24    flagged some helpful potential additional questions.  I just

25    want to speak with Ms. Levin for a moment, and then perhaps I

M61PLEVP

1    can either let her give some additional content to your Honor,

2    or I can pose some questions you might ask yourself.

3              THE COURT:  Sounds good.  Take your time.

4              MS. DABBS:  Thank you.

5              (Defendant conferring with her attorney)

6              MS. DABBS:  Your Honor, thank you for the additional

7    time.  I just have spoken with Ms. Levin about adding a little

8    bit more information to her allocution after consulting with

9    the government, and we've just mapped out something that I

10   think is appropriate and that she's comfortable with that she's

11   prepared to also state to the Court.

12             I'll just flag for your Honor that the nature of it

13   has to do with further describing the nature of Ms. Levin's

14   participation and, in particular, her financial gain as a

15   result of the offense because I suspect your Honor can tell

16   from her allocution that, given her role in both of these

17   businesses, it is not the case that she can state today that

18   she was a direct participant in the, you know, actual not

19   providing care.

20             She had a different role in connection with this

21   business; so I think it's a helpful and appropriate addition by

22   the government, and I'll let Ms. Levin proceed.

23             THE COURT:  Understood.  And, again, please just go as

24   slowly and clearly as you can, Ms. Levin.

25             THE DEFENDANT:  Thank you.  As the owner of one agency

M61PLEVP

1    and the manager at another, I continued to receive a salary,

2    and in that, I was aware that some aides were not providing

3    services that were billed to Medicaid.

4              THE COURT:  Mr. Chiuchiolo, any further questions?

5              MR. CHIUCHIOLO:  No, your Honor.

6              THE COURT:  And, Ms. Levin, when you engaged in these

7    acts, did you know that what you were doing was illegal?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Mr. Chiuchiolo, let me turn to you and ask

10   you to summarize what the government's evidence would be if

11   Ms. Levin went to trial.

12             MR. CHIUCHIOLO:  Your Honor, if this matter were to

13   proceed to trial, the government would present some of the

14   following evidence, among other things:  consensually recorded

15   conversations with the defendant and others; witness testimony;

16   e-mail and text correspondence concerning the conspiracy;

17   documentary evidence, including bank records, billing records

18   and home health aide time sheets; evidence of wires, including

19   phone communications, e-mail communications and bank wires; and

20   cell phone location records.

21             This evidence would establish that the defendant was

22   the owner of Life Quality Home Care and Always Home -- and a

23   manager of Always Home Care.  At both agencies, the defendant

24   participated in the scheme to fraudulently bill Medicaid for

25   home health and personal care services that were not actually

M61PLEVP

1    rendered.

2              In her roles as owner and director or manager of the

3    second agency, the defendant recruited co-conspirators,

4    including personal care aides and patients to participate in

5    the fraudulent scheme, managed and supervised hundreds of aides

6    who participated in the scheme, facilitated cash kickbacks to

7    patients, and used fraudulent means to sustain the agency's

8    billing rates.

9              THE COURT:  Thank you.

10             And, Ms. Levin, you were able to hear what the

11   prosecutor just said?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Does either counsel know of any -- or

14   maybe I should first ask.  Do either counsel have any

15   additional questions they would like me to ask Ms. Levin about

16   her offense conduct or generally in connection with this

17   allocution?

18             MR. CHIUCHIOLO:  No, your Honor.

19             MS. DABBS:  No, your Honor.

20             THE COURT:  And, Ms. Dabbs, do you know of any valid

21   defense that would prevail at trial?

22             MS. DABBS:  No, your Honor.

23             THE COURT:  And do either counsel know of any reason

24   why I should not accept the defendant's guilty plea at this

25   time?

M61PLEVP

1              MR. CHIUCHIOLO:  No, your Honor.

2              MS. DABBS:  No, your Honor.

3              THE COURT:  Ms. Levin, let me now ask you, how do you

4    plead to Count Three of the superseding indictment?

5              THE DEFENDANT:  Guilty.

6              THE COURT:  Can you say that again?

7              THE DEFENDANT:  I plead guilty.  Guilty.

8              THE COURT:  Guilty, okay.  Okay.  Ms. Levin, because

9    you acknowledge that you are, in fact, guilty as charged in

10   Count Three of the superseding indictment; because I am

11   satisfied that you know of your rights, including your right to

12   go to trial; and that you are aware of the consequences of your

13   plea, including the sentence which may be imposed; and because

14   I find that you are knowingly and voluntarily pleading guilty,

15   I accept your guilty plea and enter a judgment of guilty on

16   Count Three of the superseding indictment.

17             Ms. Levin, the probation department will want to

18   interview you in connection with the presentence report that it

19   will prepare.  This is the report that I mentioned a few times

20   during this proceeding.

21             Ms. Dabbs, do you wish to be present for any

22   interview?

23             MS. DABBS:  Yes, your Honor.

24             THE COURT:  I order that no interview should occur

25   unless counsel is present.

M61PLEVP

1      Ms. Levin, if you choose to speak with the probation

2  department, make sure that anything you say is truthful and

3  accurate.  As I mentioned earlier, I will read this report

4  carefully, and it will be important to me in deciding what

5  sentence to impose.

6      You and your attorneys will have a right to that

7  report and comment on it at the time of sentencing.  So read it

8  carefully, please, and discuss it with your attorneys before

9  sentencing.  If there are any mistakes in it, point it out to

10  your lawyers so they can bring them to my attention before or

11  at sentencing.

12      In terms of a sentencing date, 90 days from today

13  would bring us to around the week of August 29th, I believe.

14  Does counsel wish a sentencing date around then or a different

15  time?

16      MS. DABBS:  Your Honor, I think it would be helpful if

17  we could push that date into September, and even the second

18  half of September, if that's amenable to the Court.

19      THE COURT:  Mr. Chiuchiolo, does that work for the

20  government?

21      MR. CHIUCHIOLO:  Yes.  The government's available

22  whenever.

23      THE COURT:  Would September 26th at 10:00 a.m. work

24  for the parties?

25      MS. DABBS:  That's fine for Ms. Levin, your Honor.

M61PLEVP

1          MR. CHIUCHIOLO:  Yes, your Honor.

2          THE COURT:  Right now, a trial for the co-defendant is

3    supposed to start on the 12th, I believe; is that right?

4          MR. CHIUCHIOLO:  Yes.

5          THE COURT:  At this point, do you think the trial

6    would go more than two weeks?

7          MR. CHIUCHIOLO:  No.

8          THE COURT:  Okay.  So we'll have sentencing

9    September 26th at 10:00 a.m.  I direct the government to

10   provide the probation officer with the factual statement from

11   the government within seven days of today's proceeding.

12          I'll ask that defense counsel arrange for Ms. Levin to

13   be interviewed by the probation department within the next two

14   weeks.

15          I refer the parties to my individual rules and

16   practices for criminal cases, which are on the Court's website.

17   Nothing particularly unusual as to sentencing submissions.

18   Defense submissions are due two weeks before sentencing.  The

19   government's submission is due one week prior to sentencing.

20          Are there any other matters we should address this

21   afternoon, Mr. Chiuchiolo?

22          MR. CHIUCHIOLO:  Not from the government, your Honor.

23   Thank you.

24          THE COURT:  And, Ms. Dabbs?

25          MS. DABBS:  Northing from the defense, your Honor.

M61PLEVP

1    Thank you.

2              THE COURT:   Thank you, all.   I hope everyone is well

3    and stays well and see the parties in September.   Take care.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25